IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

KEITH E. SCHULTZ, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-13-485-JHP-SPS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
 )
       Defendant. )

## REPORT AND RECOMMENDATION

The claimant Keith E. Schultz requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 5, 1961 and was fifty years old at the time of the administrative hearing (Tr. 25). He completed ninth grade and has worked as a truck driver (Tr. 15, 185). The claimant alleges that he has been unable to work since September 5, 2011, due to a blown-out left knee and depression (Tr. 12, 185).

## Procedural History

On November 12, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 25, 2012 (Tr. 10-16). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work, *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk and sit for six hours in an eight-hour workday. The ALJ imposed the additional limitations of only occasionally climbing stairs, balancing, bending/stooping, kneeling,

crouching, and crawling, but never climbing ladders, ropes, or scaffolding (Tr. 13-14). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economy that he could perform, *e. g.*, assembler, laundry sorter, and cleaner (Tr. 16).

### Review

The claimant contends that the ALJ erred (i) by failing to properly evaluate the treating physician opinion of Dr. Bob Bruton, and (ii) by failing to discuss probative evidence that conflicted with his findings. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The medical evidence reveals that the claimant had the severe impairments of left knee derangement, meniscus tear, mild degenerative joint disease, and degenerative disk disease of the lumbar spine, as well as the nonsevere impairments of mild left shoulder degeneration and depression (Tr. 12-13). On November 13, 2009, the claimant underwent a left knee arthroscopic and partial medial meniscectomy (Tr. 239). As to his back, a lumbosacral spine radiograph from July 7, 2009 revealed that the claimant was status post surgical intervention at L4/L5 (from a 1992 back surgery), and had other degenerative changes of the lumbar spine noted (Tr. 265, 299). Due to continued complaints, the claimant again underwent arthroscopic surgery of his left knee on October 5, 2010 (Tr. 292). A surgical note states that the claimant's prognosis is "significantly guarded because of the extensive degenerative changes about the medial compartment. He will come to [need] additional surgery, which could include cartilage

transplant . . . or possible unicompartmental total knee arthroplasty" (Tr. 417). He was also noted to have osteoarthritis of the left knee. On November 9, 2010, he continued to complain of low back pain and problems with his left knee (Tr. 299). Following a fall in 2011, the claimant reported pain in his left shoulder. A scan of his left shoulder revealed that the AC joint was slightly widened, but there were no fractures identified, and an inferior osteophyte was noted at the lateral aspect of the clavicle which could predispose the claimant to a rotator cuff pathology (Tr. 477). On November 22, 2011, the claimant was again treated for his left knee, which was still causing him pain, and was offered a steroid injection that he turned down (Tr. 484).

The claimant submitted a copy of a form completed by Dr. Bruton on September 3, 2009, for a handicapped parking placard. In the application for a 5-year placard, Dr. Bruton checked boxes indicating that the claimant cannot walk 200 feet without stopping to rest, that he could not walk without a cane or other assistive device, and that he was severely limited in his ability to walk due to an arthritic, neurological, or orthopedic condition (Tr. 224).

A state reviewing physician found that the claimant could perform light work, but could never climb a ladder/rope/scaffolds, and only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl (Tr. 448-449).

The claimant also received treatment for his mental health, which included an Axis I diagnosis of mood disorder, NOS (Tr. 298). A state reviewing physician found the claimant did not have a severe mental impairment, and that he only had mild degrees of

limitation in the areas of functional limitation and no episodes of decompensation (Tr. 436).

In his written opinion, the ALJ summarized the claimant's hearing testimony, and spent one paragraph discussing the medical evidence, noting the claimant's 2009 knee surgery, that "surgery and the physical therapy and steroid shots that came afterward did not help," and that due to osteoarthritis, the claimant underwent an arthroscopy of the knee on September 21, 2010 (Tr. 14). The ALJ made no mention of follow-up treatment notes or any of the medical evidence after that. He then found the claimant not credible, stated that the evidence did not support the claimant's allegation of a "blown out" knee, or the need for a total knee replacement (Tr. 15). He then found the RFC was supported by a state reviewing physician assessment (Tr. 15).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or

not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ failed to even mention, much less discuss, the majority of the medical record. He even incorrectly stated that the record did not indicate the claimant would need a total knee replacement. Indeed, the sparse analysis at step four seemed an attempt to undermine the claimant's complaints related to his severe physical impairments, essentially calling into question the findings of severity at step two. What the ALJ should have done instead was provide an explanation as to how impairments found to be severe at step two became so insignificant as to require no corresponding limitations in the RFC at step four. *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Additionally, he then concluded without explanation that his assessment was supported by the opinions of the state reviewing physicians. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86

(7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ engaged in improper picking and choosing to discredit evidence that was inconsistent with his RFC determination, the Court cannot find that he performed the proper analysis. *See, e. g., Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby*, 260 Fed. Appx. at 112 (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**